`UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES LYLE WHITE, II,

    Plaintiff,

v.

DOUGLAS BERNACCHI, LEON
ZAPPIA, DOUGLAS BERNACCHI,
P.C., and LEON ZAPPIA, P.C.,
jointly and severally

    Defendants.
_____/

Case No. 1:04-CV-43

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Douglas Bernacchi's Motion for Summary Judgment, Defendants Leon Zappia and Leon Zappia, P.C.'s Motion for Summary Judgment, and Plaintiff Charles Lyle White, II's Motion for Partial Summary Judgment.[1] Having been fully briefed on the issues submitted for decision, the Court finds oral argument unnecessary. W.D. Mich. LCivR 7.2(d).

**I.    BACKGROUND**

The facts surrounding this case are simple. This is a legal malpractice action wherein a dispute arose from the settlement and handling of Plaintiff's personal injury claims. The claims stemmed from Plaintiff's involvement in an automobile accident on April 21, 2001, where Plaintiff

---

[1] Defendant Leon Zappia and Leon Zappia, P.C. will be referred to solely as Defendant Leon Zappia for purposes of this Opinion. The actions of the individual and his corporate form are indistinguishable in terms of liability. Defendant Douglas Bernacchi, P.C. was terminated from this action on June 1, 2004. For purpose of clarity and because all Defendants' motions are virtually identical, all of Defendants' motions will be considered together.

was an occupant in a vehicle driven by Josh Muday. Muday was killed and White suffered significant injuries.

Shortly thereafter, Plaintiff retained Defendants to represent him as his attorneys and pursue any claims he may have.[2] Plaintiff executed a retainer agreement and agreed to pay Defendants ten percent of any recovery.[3] Plaintiff settled with Muday's insurer for $100,000 and Defendants received $10,000 from that amount.

## II.   STANDARD OF REVIEW

As a threshold matter, the Court notes that because this case is before it on diversity jurisdiction, it is bound to apply Michigan law in deciding the substantive issues supporting Plaintiff's claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If the Michigan Supreme Court has not spoken on a particular issue, the Court must determine state law based on decisions of the Michigan Court of Appeals, federal courts interpreting Michigan law, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995) (internal citations omitted).

As for procedural matters, the Court is guided by the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). While the line between substance and procedure can often blur, here the distinction is clear and the Court will look to Michigan law for substantive guidance on duties, standards and the necessary ingredients of a cause of action, while applying the Federal Rules of Civil Procedure with regard to burdens and presumptions.

---

[2] Plaintiff originally retained Defendant Bernacchi, who then, as provided for in the retainer agreement, associated with Defendant Zappia.

[3] The actual agreement makes reference to several different figures, but the record is clear that Plaintiff was charged only ten percent.

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. Since multiple parties moved for summary judgment and partial summary judgment, each litigant will be accorded the status of movant and non-movant when applicable.

### III.   ANALYSIS

Plaintiff's six count Complaint alleged ordinary negligence, legal malpractice, spoilation, a violation of the Michigan Consumer Protection Act ("MCPA"), fraudulent concealment and

conversion. This Court dismissed Plaintiff's spoilation and MCPA claims in a March 28, 2005 Opinion. Defendants seek summary judgment on all remaining counts. Plaintiff requests partial summary judgment in his favor on his negligence claim and legal malpractice claim. The Court will address each motion as it relates to the remaining counts of Plaintiff's Complaint.

**A.     Negligence**

Before reaching the merits of Plaintiff's negligence claim, the Court is compelled to dismiss it, or more accurately consolidate it into Plaintiff's legal malpractice claim because a negligence claim averring deficient legal representation sounds in the tort of legal malpractice. *Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 490 (1990).[4]

When characterizing potentially duplicative claims in a legal malpractice context, it is manifest for this Court to read Plaintiff's Complaint as a whole and determine the type of interest allegedly harmed and how it is claimed to have occurred. *Id.* (internal citations omitted). In application of these principles to claims of negligence, subsequent panels of the Michigan Court of Appeals have found this to mean that when a plaintiff alleges negligent legal representation, the allegations sound in malpractice and cannot constitute a separate cause of action—the alleged negligence is subsumed by the malpractice claim. *Fritz v. Monnich*, No. 235262, 2003 WL 21186652, *2 (Mich. App. May 20, 2003); *Melody Farms, Inc. v. Carson Fischer, PLC*, 2001 WL 740575, *5 (Mich. App. Feb. 16, 2001).[5]

---

[4] Plaintiff contends that "conduct by Defendants does not equate to the 'practice of law.'" (Pl.'s Reply Br. to Defs.' Mot. for Summ. J. at 8). While the Court will leave for the proper bar associations the task of evaluating the propriety of Defendants' behavior, it is clear that Plaintiff dealt with Defendants in their professional capacities as attorneys at all relevant times.

[5] Furthermore, a comparison of the elements of malpractice and negligence illustrates that both counts cannot coexist in one Complaint originating from a common nucleus of facts. The

Thus, the Court finds Plaintiff's negligence claim is subsumed by his malpractice claim and will be addressed more thoroughly in section B, *infra*, of this Opinion.

**B.     Legal Malpractice**

Plaintiff contends that the retainer agreement obligated Defendants to use their $10,000 fee to investigate further claims Plaintiff may have had. The agreement purportedly makes it Defendants' responsibility to "proceed against any and all parties . . . ." Specifically, Plaintiff asserts that Defendants were required to investigate a possible Dram Shop Act claim against a bar Plaintiff maintains he was at before the accident, an action against the manufacturer of the vehicle, against Muday's estate, and against a repair shop that previously serviced the vehicle. Plaintiff also charges Defendants with malpractice for advising Plaintiff to sign a settlement agreement that, according to Plaintiff, released Muday and all other persons from any liability resulting from the accident.

To show legal malpractice Plaintiff must demonstrate: (1) the existence of an attorney-client relationship; (2) breach of that duty; (3) causation; and (4) damages. *Simko v. Blake*, 448 Mich. 649, 655 (1995). Defendants oppose the motion and urge that Plaintiff's claim is deficient with respect to at least one element on all grounds asserted. Each ground warrants individual scrutiny.

---

elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) breach of that duty; (3) causation; and (4) damages. *Simko v. Blake*, 448 Mich. 649, 655 (1995). Negligence necessitates a showing of: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). The first element of each tort requires there be a duty to act for Plaintiff's benefit. The attorney-client relationship merely establishes and shapes the contours of what that duty requires, but it cannot be said to be a different element entirely. Legal malpractice is simply a variation of negligence that requires attorneys to exercise *reasonable* skill, care, discretion, and judgment as a matter of law. *Simko*, 488 Mich. at 655-56 (emphasis supplied); *Barnard v. Dilley*, 134 Mich. App. 375, 379 (1984) ("Where the alleged duty arises out of [the attorney-client] relationship, the tort claim is one for malpractice and malpractice only.").

### 1.     Failure to Investigate Dram Shop Act Claim

The most relevant inquiry is whether Defendants breached their duty of care. Defendant attorneys were required to exercise reasonable skill, care, discretion, and judgment in representing Plaintiff. *Simko*, 448 Mich. at 655-56. Where an attorney acts in good faith and in an honest belief that his actions are in the best interest of his client, he shall not be made to answer in malpractice for mere errors in judgment. *Id.* at 658 (citations omitted).

Plaintiff's contention is not that Defendants' malpractice was the result of an oversight in failing to file suit; it is claimed that Defendants' affirmative decision not to pursue a dram shop claim action was unreasonable.[6] Therefore, "the critical question here is not whether plaintiff[] would have ultimately prevailed on [his dram shop] claim. Rather, the issue is whether [D]efendant attorneys exercised reasonable skill, care, discretion, and judgment when they determined that [Plaintiff's] claim was not worth pursuing." *Estate of Mitchell v. Dougherty*, 249 Mich. App. 668, 678 (2002).

Defendants have demonstrated their actions were reasonable by submitting evidence that Plaintiff did not authorize any expenditures to investigate a dram shop claim, (Def. Bernacchi's Dep. at 184-85), Plaintiff had problems showing dram shop causation, (*Id.* at 186-87), and a dram shop

---

[6] The parties have argued feverishly on issues of causation and whether Plaintiff is required to prove his "case within a case." That is, whether he must show that but for Defendants' alleged malpractice, Plaintiff would have been successful in a dram shop action. *Charles Reinhart Co. v. Wimiemko*, 444 Mich. 579, 586-87 (1994). This line of reasoning overlooks the most pivotal aspect of this case, that Defendants' made an affirmative decision not to pursue a dram shop claim. Plaintiff makes sweeping allegations that Defendants did not investigate the dram shop claim but does not offer any evidence to refute Defendants' claim that at least one attorney did investigate the legal sufficiency of the claim. (Def. Bernacchi's Dep. at 188). Thus, Plaintiff's contention, now properly recharacterized, is that Defendants' assessment that no dram shop claim existed was unreasonable.

claim would have possibly resulted in a probation violation for Plaintiff. (*Id.* at 188-89). Therefore, very early in the representation, Defendants determined that a dram shop action was not a viable mode of recovery. (Def. Zappia's Dep. at 88). In light of the preceding, Plaintiff has offered no evidence that Defendants' decision to forego a dram shop action was unreasonable. Plaintiff merely highlights what Defendants' have not done, never once suggesting that Defendants' dram shop decision was unreasonable under the circumstances.[7] Any one of Defendants' proffered justifications not to pursue a dram shop action was a reasonable exercise of attorney judgment; viewed collectively their decision is virtually beyond reproach.

There may have been some merit to Plaintiff's dram shop claim. Nevertheless, this Court is mindful and obedient to precedent that an attorney is not obligated to pursue an action "whenever there is some scintilla of evidence supporting the client's claim," *Estate of Mitchell*, 249 Mich. App. at 679, and is further mindful that a dram shop action, given Plaintiff's probation status, was likely not in his best interest. *Simko*, 448 Mich. at 658.

Thus, this Court finds as a matter of law that Defendants exercised reasonable skill, care, discretion, and judgment in their decision not to pursue a dram shop claim.

---

[7] Plaintiff's Reply Brief to Defendants' Motion for Summary Judgment is replete with allegations of ethical violations and, with the benefit of hindsight, what Defendants could have done to unearth evidence supporting a cause of action. However, fatal to Plaintiff's claim is that he never refutes that Defendants' conduct was reasonable given Plaintiff's express desire to limit expenditures, Defendants' weak appraisal of Plaintiff's case, and the possibility of Plaintiff's probation ramifications should Defendants pursue a dram shop claim. Because Plaintiff has not responded to Defendants' evidence that their conduct was reasonable, no genuine issue for trial exists. Fed. R. Civ. P. 56(e).

### 2. Failure to Investigate Claims Against The Vehicle Manufacture or Repair Shop

Defendants contend that because Plaintiff will not produce any expert testimony concerning a manufacturer's defect or a negligent repair, he cannot show causation. Even the most charitable reading of Plaintiff's Reply Brief to Defendants' Motion for Summary Judgment is bereft of any opposition to Defendants' motion on this ground. Accordingly, summary judgment must issue for Defendants, Fed. R. Civ. P. 56(e), and this Court finds as a matter of law that Defendants did not commit malpractice on account of their decision not to pursue a claim against the vehicle manufacturer or the repair shop.

### 3. Failure to Investigate Claims Against Muday's Estate

As noted in Section B, subsection 1, *supra*, the Court's task is to determine whether Defendants' exercised reasonable skill, care, discretion and judgment. *Simko*, 448 Mich. at 655-56; *Estate of Mitchell*, 249 Mich. App at 678. According to Defendants, the decision not to pursue an action against Muday's estate was Plaintiff's and they rely on Plaintiff's testimony in relevant part:

> Q: Did [Muday] have any assets that you're aware of?
>
> A: He had his truck
>
> Q: Is that about it?
>
> A: (Nodding head in affirmative)
>
> Q: Is that correct?
>
> A: Yes, sir.
>
> Q: Did you ever ask Mr. Zappia or Mr. Bernacchi to sue his estate to get that truck?

> A: No. I told them not to touch it. That's my cousin. You know, I don't need to remind—you know, that's just a reminder to me every single day about what happened if I do that. That's my family too.

Plaintiff now contends that his testimony meant only that he wanted to limit his legal remedy against the truck but still wanted to proceed against the estate. While this is a plausible reading of his testimony, it is a perverse interpretation given the circumstances. If Plaintiff was actively seeking Muday's assets, there is no reason to reject the idea of going after the truck; certainly it could be sold for parts or as scrap metal.[8]

Furthermore, Defendant Zappia testified that it was his understanding that Plaintiff did not want to sue Muday, (Def. Zappia's Dep. at 99), and Defendants both testified that Plaintiff told them Muday had no remaining assets beyond the mangled truck. (*Id.*); (Def. Bernacchi's Dep. at 144). In rebuttal, Plaintiff has offered nothing beyond a half-hearted attempt to manufacture a genuine issue of material fact out of Plaintiff's testimony. The Court is confident that a fair-minded jury would return a verdict for Defendants on the evidence presented. *Anderson*, 477 U.S. at 252. Therefore, the Court finds that Plaintiff excluded Muday's estate from the objectives sought by Defendants' representation, and thus, their decision not to seek recovery from Muday's estate was reasonable.

Accordingly, this Court finds as a matter of law that Defendants exercised reasonable skill, care, discretion and judgment in their decision not to pursue a claim against Muday's estate.

---

[8] The Court is also suspicious of Plaintiff's sincerity as to this ground of malpractice liability and is skeptical that Plaintiff would have ever sued his cousin's estate. After a fair reading of the record, the claimed lost cause of action against Muday's estate appears to be an after thought designed to hang malpractice liability on Defendants by any means possible.

### 4. Advising Plaintiff to Release All Other Persons From Liability

Plaintiff contends that because Defendants advised him to execute a release that absolved, in addition to Muday, any and all other persons from any liability resulting from the accident, said release worked to somehow jeopardize the receipt of personal protection insurance benefits under Michigan's No-Fault Insurance Act. Mich. Comp. Laws § 500.3107. Working backward through the elements of malpractice affords Defendants a ready basis for summary judgment.

To show damages, Plaintiff is required to demonstrate that he has been actually injured by Defendants' malpractice, not just the potential for injury. *Colbert v. Conybeare Law Office*, 239 Mich. App. 608, 620 (2000); *Keliin v. Petrucelli*, 198 Mich. App. 426, 430 (1993); *MuCluskey v. Womack*, 188 Mich. App. 465, 473 (1991). Regardless of who the release purports to absolve from liability, what is clear is that Plaintiff's personal protection benefits have not been terminated or reduced as a result of the release. Consequently, Plaintiff cannot show damages and his suit for malpractice on this ground is premature at best.[9]

---

[9] The Court is also not entirely convinced that a generic release of this sort automatically works to release anybody and everybody from potential liability. In *Batshon v. Mar-Que Gen. Contractors, Inc.*, 463 Mich. 646, 649 (2001), the Michigan Supreme Court went to great lengths to interpret a generic lease of this type as only releasing its signatories and no others, but did not precisely hold that an intent based inquiry is necessary. Should this question present itself again to the Michigan Supreme Court, it may likely view Judge Hoekstra's views in *Romska v. Opper*, 234 Mich. App. 512, 522 (1999) (Hoekstra, J., concurring in part and dissenting in part) as persuasive. In a well reasoned discussion, Judge Hoekstra concluded that it was necessary to look at what the parties intended when signing a generic release to ascertain if it actually released every potential defendant. *Id.* This view is not held by all Michigan Court of Appeals judges. *Cf. Khalil v. Reliance Nat'l Indem.*, No. 251912, 2005 WL 857140 (Mich. App. Apr. 14, 2005). Thankfully this Court can leave for another day the task of predicting precedent because Plaintiff cannot demonstrate any damages from Defendants' alleged malpractice.

Plaintiff asserts that he has suffered compensable mental anguish damages within the meaning of *Gore v. Rains & Block*, 189 Mich. App. 729 (1991). Plaintiff misinterprets the holding of *Gore*. In *Gore*, where the defendants had already admitted the elements of malpractice, the court held that a malpractice plaintiff is entitled to recover damages for the malpractice and the mental anguish caused by the legal malpractice. *Id.* at 740-41. The court did not find that mental anguish satisfies Plaintiff's burden of showing damages as part of a *prima facie* case of malpractice. Mental anguish damages are generally added on to a compensatory award that flows from the underlying tort but do not suffice as damages in and of themselves.

Therefore, this Court finds as a matter of law that Plaintiff has failed to establish a *prima facie* case of legal malpractice and Defendants are entitled to summary judgment.[10]

### C. Fraudulent Concealment

Fraud may be consummated by the suppression of facts or by openly false assertions. *Fred Macey Co. v Macey*, 143 Mich. 138, 153 (1906). Fraudulent concealment alleges the former. *Sullivan v. Ulrich*, 326 Mich. 218, 228 (1949). While count four of Plaintiff's Complaint is titled Fraudulent Concealment, a liberal reading of allegations contained in that section of his Complaint amounts to a claim that he was affirmatively defrauded by Defendants and will therefore be read as a fraud claim. The bases for Plaintiff's fraud claim is that he alleges Defendants told him that they would use their $10,000 fee to investigate further claims that Plaintiff may have resulting from the accident.

---

[10] This is not to say that, if proven, Defendants' conduct was by any means proper within the applicable professional codes of conduct. This Court is bound to provide a remedy only when Plaintiff has met his burden of demonstrating a *prima facie* case of malpractice. Plaintiff simply failed to demonstrate all the necessary elements.

To show fraud, Plaintiff must demonstrate that: (1) Defendants made a material representation; (2) it was false; (3) when Defendants made it, they knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) they made it with the intention that it should be acted upon by Plaintiff; (5) Plaintiff acted in reliance upon it; and (6) Plaintiff thereby suffered injury. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976). The absence of any one element is fatal to a recovery.

The Court has already determined that Defendants completed at least some investigation of Plaintiff's potential claims. *See supra* Section B. Plaintiff's quarrel is simply with the sufficiency of Defendants' investigation. Therefore, Defendants did not make a false representation to Plaintiff.

### D.   Conversion

Plaintiff claims that Defendants converted the $10,000 contingency fee paid to Defendants. As stated above, Plaintiff's theory is that the funds were misapplied by Defendants, *i.e.*, they were applied as a contingency fee rather than expended for the investigation of further claims. Again, the Court has already found that Defendants undertook an investigation and Plaintiff merely objects to the sufficiency of their investigation. Therefore, Plaintiff cannot show that the funds were misapplied and consequently, a claim of conversion cannot follow.

## IV.   CONCLUSION

The Court will grant Defendant Douglas Bernacchi, Defendant Leon Zappia, and Defendant Leon Zappia, P.C.'s Motions for Summary Judgment. The Court will deny Plaintiff's Motion for Partial Summary Judgment. A Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:　　　　　　 /s/ Richard Alan Enslen  
　　September 29, 2005　　　　　　　RICHARD ALAN ENSLEN  
　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE